FILED

2024 Aug-08  PM 02:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| CURTIS DAVIS, *et. al*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 6:18-cv-1433-LSC |
| v. | ) | |
| | ) | |
| MAR-JAC POULTRY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**MEMORANDUM OF OPINION**

There are two Motions before the Court: a Joint Motion for Approval of the Stipulated Settlement Agreement, Declaratory Judgment and Permanent Injunction (Doc. 184) and Plaintiffs' Petition for Attorneys' Fees, Costs, and Expenses (Doc. 190.) The Court begins with the motion to approve the class settlement and will then turn to the fee petition.

## I.   JOINT MOTION FOR APPROVAL OF THE STIPULATED SETTLEMENT AGREEMENT, DECLARATORY JUDGMENT, AND PERMANENT INJUNCTION

This has been a long and hard-fought employment discrimination lawsuit, which is now coming to a close. Both sides have notched wins and losses. Specifically, the Court has entered Orders denying Defendant Mar-Jac Poultry AL, LLC ("Mar-Jac")'s Motion for Summary Judgment, Motion to Strike Plaintiff's Expert, and Motion to Strike Plaintiff's Expert Report; denying Curtis Davis's

Motion for Sanctions, Motion to Strike Mar-Jac's Supplemental Expert Report, and Motions for Certification of a Rule 23(b)(3) Class; and granting Davis's Motion for Certification of a Rule 23(b)(2) Injunctive Class. (Doc. 122; Doc. 131; Doc. 183.) After the Court issued its third Opinion on the class certification issue (Doc. 183), reaffirming certification of a Rule 23(b)(2) class and denial of a Rule 23(b)(3) class, the Parties gave notice that a settlement had been reached on both the class claims and Davis's individual claims. The Parties now stipulate that judgment should be entered in favor of Plaintiffs. (Doc. 184.) They ask the Court to enter the injunctive and declaratory relief attached in their Stipulated Final Judgment and Permanent Injunction, in favor of Plaintiff Curtis Davis and the class he represents and against Defendant Mar-Jac Poultry AL, LLC ("Mar-Jac"). (Doc. 184-2.)

Federal Rule of Civil Procedure 23(e) requires court approval of a class action settlement and describes the procedure. When a settlement is binding on the class, a court must conduct a final fairness hearing prior to approving the settlement, and a court must determine whether directing notice of the proposed settlement to class members is justified. Fed. R. Civ. P. 23(e)(1)(B), (2). However, as this proposed settlement is non-binding, a final fairness hearing is not required. Fed. R. Civ. P. 23(e)(B)(2). Additionally, because the proposed settlement is non-binding, the Court

further finds that notice is unnecessary, in terms of Rule 23(e) or due process.[1] *See Juris v. Inamed Corp.*, 685 F.3d 1294, 1317 (11th Cir. 2012) (explaining the notice provisions of Rule 23 "are meant to protect the due process rights of absent class members"); *see also Battle v. Liberty Nat'l Life Ins. Co.*, 770 F. Supp. 1499, 1520 (N.D. Ala. 1991) (explaining that the due process concerns in the notifying class members are to ensure that the named plaintiffs and class counsel will not serve their own interests, or compromise the interests or legal rights of class members).

But regardless of whether a class settlement is binding or non-binding, a district court may only approve it upon finding that the settlement "is fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). In making this determination, district courts have

---

[1] In general, when the proposed class settlement derives from Rule 23(b)(2), rather than Rule 23(b)(3), notice will often be less essential. As noted in the comments to the 2003 Amendments to Rule 23, for a Rule 23(b)(2) class, a court "may decide not to direct notice after balancing the risk that notice costs may deter the pursuit of class relief against the benefits of notice." *Advisory Committee Notes on Rules*, 2003 Amendments. Further, courts have decided not to direct notice in Rule 23(b)(2) classes when "there is cohesiveness or unity in the class and the representation is effective," *Exum v. Nat'l Tire & Battery*, No. 9:19-cv-80121, 2020 WL 1670997, at *7 (S.D. Fla. Apr. 6, 2020) (quoting 7B *Fed. Prac. & Proc. Civ.* § 1793 (3d ed.), the "members were too numerous," or "where class members could be or were notified by other means." *Exum*, 2020 WL 1670997, at *7 (collecting cases). Accordingly, even if the class settlement was binding, notice would not be required because there is cohesion in this class, as all class members were rejected for employment by Mar-Jac allegedly for racially discriminatory reasons, and Davis has provided representation to that end; the estimated number of class members is over 2,000 individuals; and many class members will receive notice as a result of Mar-Jac's commitment to review the employment of every non-Hispanic applicant from 2016 to now and reconsider their application and to physically post a "Notice to All Employees," explaining its anti-discrimination policy and the remedial hiring process (Doc. 184-2).

traditionally considered the following factors: "(1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense, and duration of the litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Bennett*, 737 F.2d at 986. Further, in considering whether the proposed settlement satisfies the "fair, adequate and reasonable" standard, "the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330.

The Court has reviewed the parties' proposed settlement (Doc. 184-2) and believes it is not a product of collusion. "Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion. Further, where the case proceeds adversarially, this counsels against a finding of collusion." *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014) (citations omitted). Here, the settlement was negotiated at arm's length and was the product of nearly six years of discovery and intense litigation before this Court. (Doc. 184 at 2.) Counsel participated in four mediations to eventually obtain this settlement. (Doc. 194-1; Doc. 197-2.) It is therefore clear that the settlement was not the product of collusion.

Further, the proposed settlement is "fair, adequate and reasonable" under the *Bennett* factors. First, in terms of the likelihood of success at trial, there is no guarantee of success for either the disparate treatment or the disparate impact claim, particularly considering the parties' conflicting evidence and dueling experts. As to the range of possible recovery and the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable,[2] the proposed declaratory judgment and permanent injunction is robust and provides for the top end of the range of possible recovery. The proposed injunction, which will expire after four years, provides for: changes in Mar-Jac's recruitment and advertising; institution of non-discriminatory policies prior to engaging independent contractors and consultants; changes in hiring policies, including a ban on the three-strikes policy and a plan for reconsideration of non-hired applicants during the relevant time period; training of hiring supervisors and other management; posted notice in the plant itself; reporting to Plaintiffs' counsel for a few years; and reservation and retention of rights for class members. It is difficult to imagine what more Plaintiffs could hope to recover at trial. As to the complexity, expense, and duration of the litigation, this litigation has dragged on for nearly six years and incurred exorbitant costs. The parties have litigated the novel issue of a mixed-motive Title VII disparate

---

[2] "The second and third considerations of the *Bennett* test are easily combined." *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 541 (S.D. Fla. 1988).

treatment class action claim, which has only added to the expense and duration. If this case were to go to trial, the resources of the parties and the Court would only continue to hemorrhage. It is therefore fair, adequate, and reasonable to settle at this point. Additionally, there is no opposition to this settlement, and it has been obtained in anticipation of a long and expensive trial. Rather than forcing the Plaintiffs to endure that, the Court approves this settlement. *See Bennett*, 737 F.2d at 986 ("[O]ur judgment is informed by the strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement.").[3]

## II.   PLAINTIFFS' PETITION FOR ATTORNEYS' FEES, COSTS, AND EXPENSES

Now, to close out this case, there is the issue of attorneys' fees, costs, and expenses to Plaintiff Curtis Davis and the class he represents. The parties agree that

---

[3] To the extent that the Court should also consider the fairness factors enumerated under Rule 23(e)(2), many of these factors closely relate to the *Bennett* factors and, in any event, are likewise satisfied. *See Ponzio v. Pinon*, 87 F.4th 487, 495 (11th Cir. 2023). The factors provided under Rule 23(e)(2) are:

    (A) the class representatives and class counsel have adequately represented the class;
    (B) the proposal was negotiated at arm's length;
    (C) the relief provided for the class is adequate, taking into account:
        (i) the costs, risks, and delay of trial and appeal;
        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
        (iv) any agreement required to be identified under Rule 23(e)(3); and
    (D) the proposal treats class members equitably relative to each other.

As previously discussed, the Court has detected no signs of collusion, Davis and his attorneys have prosecuted this action zealously, and the settlement was negotiated at arm's length. The relief is also adequate when taking into account the risk of trial compared to the benefit of settlement to each class member. The only other agreement is Davis's personal settlement, which the parties have provided. And lastly, as this is a Rule 23(b)(2) class providing for identical injunctive and declaratory relief, the settlement treats each class member equitably.

Plaintiff Davis and the Rule 23(b)(2) class are the prevailing parties in this action and are therefore entitled to reasonable attorneys' fees, costs, and expenses. (Doc. 184-1 ¶ 3.); *see* 42 U.S.C. § 1988 (allowing attorneys' fees in vindication of civil rights, including for actions brought pursuant to Title VII and Section 1981). But in terms of the amount owed, the parties are a world apart. Plaintiffs initially requested $1,602,303.00 in attorneys' fees and $65,693.00 in expenses (Doc. 190), while Mar-Jac asked the Court to at least reduce Plaintiffs' attorneys' fees to $751,590.00 and costs to $59,698.75 and to further reduce in the Court's discretion (Doc. 194). Plaintiffs now request additional fees for the time spent litigating the fee question. *See Martin v. Univ. of S. Ala.*, 911 F.2d 604, 610 (11th Cir. 1990) ("It is well settled that time expended litigating attorney fees is fully compensable."). Specifically, they contend that Attorney Camp has spent an additional 20.9 hours, which increases the attorneys' fees request by $11,495.00 to $1,613,798.00. (Doc. 197-2 ¶ 17; *Id.* at 37.)

## A. Effect of the Rule 68 Offer on Attorneys' Fees

The Eleventh Circuit has adopted a three-step approach in assessing attorneys' fees: first, the district court is to determine whether the petitioner is entitled to attorneys' fees; second, the court is to calculate the "lodestar"; and third, the court is to adjust the "lodestar" to account for results obtained. *See Ceres Enviro. Servs., Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 201–02 (11th Cir. 2012)

(citing *Atlanta J. & Const. v. City of Atlanta Dep't of Aviation*, 442 F.3d 1283, 1289 (11th Cir. 2006)).

As a preliminary matter, Mar-Jac argues that Plaintiffs should not be entitled to any attorneys' fees or costs incurred after its Rule 68 offer, which was tendered on August 9, 2021. (Doc. 193-1.) Mar-Jac has highlighted the hours that it specifically objects to on this ground. (Doc. 194-3.)

Rule 68 provides, in relevant part: "At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. . . . If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68. "[B]ecause the enforcement provision of Title VII defines costs to include attorneys' fees, the cost-shifting provision of Rule 68 also applies to attorneys' fees in Title VII cases." *Furcron v. Mail Ctrs. Plus, LLC*, 776 F. App'x 622 (11th Cir. 2019) (citing *Canup v. Chipman-Union, Inc.*, 123 F.3d 1440, 1445 (11th Cir. 1997)). "[T]he mandatory language of the rule leaves no room for district court discretion." *Jordan v. Time, Inc.*, 111 F.3d 102, 105 (11th Cir. 1997).

Plaintiffs appear to suggest that Rule 68 is not applicable in the context of a class action lawsuit. Some courts and commentators have adopted this principle, reasoning that there are irreconcilable conflicts between Rule 68 and Rule 23. *See*

8

*Schaake v. Risk Mgmt. Alts., Inc.*, 203 F.R.D. 108, 111 (S.D. NY. 2001) (first citing *Gay v. Waiters' & Dairy Lunchmen's Union*, 86 F.R.D. 500, 503 (N.D. Cal. 1980); then citing *Janikowski v. Lynch Ford, Inc.*, No. 98 C 8111, 1999 WL 608717, at *2 (N.D. Ill. Aug. 5, 1999); then citing *Martin v. Mabus*, 734 F. Supp. 1216, 1222 (S.D. Miss. 1990); then citing 1 *Newberry on Class Actions,* § 15.36, "*Inapplicability of Rule 68 Offer of Judgment in a Class Action Context* " at 15–101 (3d ed. 1992)); *Zeigenfuse v. Apex Asset Mgmt., L.L.C.*, 239 F.R.D. 400, 403 (E.D. Penn. 2006). However, many of these cases pertain to Rule 68 offers made during the precertification phase of a putative class action, in which there is a much greater chance of a conflict of interest created between the putative class representative and the class and there is a much greater possibility that that the defendant will use the Rule 68 offer as a way of "picking off" potential class representatives to undermine Rule 23. *See Schaake*, 203 F.R.D. at 110–11; *Zeigenfuse*, 239 F.R.D. at 402; *Janikowski*, 1999 WL 608717, at *2.

These dangers are not present when a Rule 68 offer is made individually to a plaintiff, like Davis, whose class certification motion was denied because the plaintiff can accept the Rule 68 offer and still appeal the denial of the certification decision. *See Greisz v. Household Bank (Illinois), N.A.*, 176 F.3d 1012, 1015 (7th Cir. 1999) (citing *Love v. Turlington*, 733 F.3d 1562 (11th Cir. 1984)); *see also Zeigenfuse*, 239 F.R.D. at 403 ("If class certification is ultimately denied, defendant,

of course, will then be free to make an offer of judgment containing the cost shifting

provision of Rule 68."). Further when the Rule 68 offer is made to a certified class

itself, even though the Court would have to approve any settlement under Rule 23(e),

the Court is still persuaded that Rule 68 and Rule 23 can be read harmoniously and

that not applying Rule 68 in the class action context would amount to a "judicial

amend[ment]" of the Rule. *See Mey v. Monitronic Int'l, Inc.*, No. 5:11CV90, 2012

WL 983766, at *5 (N.D. W. Va. Mar. 22, 2012); *McDowall v. Cogan*, 216 F.R.D.

46 50–51 (E.D.N.Y. 2003). As one district court explained, albeit in dicta:

> [T]he Rules of Civil Procedure do not exempt offers of judgment from class
> actions: Rule 1 makes clear that the Federal Rules of Civil Procedure "govern
> the procedure in all civil actions and proceedings," except as provided for in
> Rule 81. Fed. R. Civ. P. 1 (emphasis added). Rule 81 does not exempt Rule
> 23 from Rule 68. Fed. R. Civ. P. 81. Furthermore, the Advisory Committee
> was well aware of Rule 23, but it chose not to exempt Rule 23, i.e., class
> actions, from Rule 68's purpose. To be sure, the Advisory Committee rejected
> a proposed amendment to Rule 68 that would have exempted Rule 23
> from Rule 68. See Committee on Rules of Practice and Procedure of the
> Judicial Conference of the United States, Preliminary Draft of Proposed
> Amendments to the Federal Rules of Civil Procedure (Sept. 1984), reprinted
> in 102 F.R.D. 407, 433 (1985). "There is even some indication that the
> Supreme Court would disapprove any effort to treat class actions differently
> for Rule 68 purposes." 12 Charles Alan Wright & Arthur R. Miller, Federal
> Practice & Procedure § 3001.1 (2d ed. 1997).

*Northrup v. Indep. Truckers Grp., Inc.*, No. 8:17-cv-1890, 2018 WL 1787506, at *2

(M.D. Fla. Apr. 12, 2018) (citing *Leahy-Fernandez v. Bayview Loan Servicing, LLC*,

No. 8:15-CV-2380-T-33TGW, 2016 WL 1047159, at *1 (M.D. Fla. Mar. 16, 2016)).

Accordingly, the Court finds that a Rule 68 offer can be made to a plaintiff whose class certification motion was denied or to a certified class itself.

That leads to the question of to whom the Rule 68 offer was made and whether the offer was more or less favorable than the settlement obtained. First, the Rule 68 offer, dated August 9, 2021, is explicitly made to "Plaintiff Curtis Davis." (Doc. 193-1.) It is not made to "Plaintiffs" or to "Plaintiff Curtis Davis, as representative of the class," or to "Plaintiff Curtis and the class he represents." Rather, the plain text of the offer is only made out to Davis as an individual. Mar-Jac emphasizes that the Rule 68 offer references injunctive relief where it would "refrain permanently from applying any automatic bar on re-employment of former *employees*," plural, and that contextually the offer was made after the Court's certification of the Rule 23(b)(2) class and second rejection of a Rule 23(b)(3) class. However, the Court must assume that Mar-Jac meant what it said: that it was making an offer for monetary and injunctive relief to Davis as an individual and not to the Rule 23(b)(2) class.

Further, even if the Rule 68 offer made to the Rule 23(b)(2) class, it is not more favorable to the class than the settlement they obtained. The Eleventh Circuit has suggested that it is the defendant's burden to establish that the judgment the plaintiff obtains is not more favorable than the Rule 68 offer. *See Danow v. Law Off. of David E. Borack, P.A.*, 367 F. App'x 22, 24 (11th Cir. 2010). "[T]he non-monetary elements of a judgment should be considered when comparing it to a Rule 68 offer."

*Vasconcelo v. Miami Auto Max, Inc.*, 981 F.3d 934 (11th Cir. 2020); *see Danow*, 367 F. App'x at 24 (affirming the district court's finding that defendants did meet their burden in showing that plaintiff's final recovery of $1,000 in statutory damages was not more favorable than the Rule 68 offer, which offered $1,000 in damages and $2,000 in attorneys' fees and costs in exchange for settlement and a confidential release); *Lynch v. First Nat'l Collection Bureau, Inc.*, No. 11-60798, 2011 WL 2457903, at *2 (S.D. Fla. June 17, 2011).

In addition to the monetary damages offered to Davis individually, the Rule 68 offer provided: "Defendant also will consent to self-imposed injunctive relief, to wit: Defendant will refrain permanently from applying any automatic bar on re employment of former employees, including but not limited to a '3-strikes' or '4-strikes' disqualification for former employees applying for employment with Defendant." (Doc. 193-1.) However, the class settlement provided for more than a prohibition of the reinstatement of the three-strikes or four-strikes policy, which would only have benefited some class members (namely, those class members who are former employees). Even assuming the class members would have the same rights to appeal the denial of the Rule 23(b)(3) class certification and rights to file new lawsuits under both the Rule 68 offer and the eventual settlement,[4] the eventual

---

[4] The parties strongly disagree as to whether the Settlement Agreement was favorable to the class in terms of preservation of their rights to file new lawsuits for monetary remedies or to pursue denial of the Rule 23(b)(3) certification, compared to the Rule 68 offer or even if Plaintiffs had

settlement is still more favorable because it: 1) provides for a special remedial hiring program in which Mar-Jac will reconsider non-hired, non-Hispanic applicants and report to Plaintiffs' counsel why these individuals were not hired (Doc. 184-2 ¶ 1(b)); 2) requires Mar-Jac to establish nondiscriminatory policies and contractual terms prior to engaging independent contractors or consultants to recruit workers (*Id.* ¶ 1(a)(iii)); 3) requires Mar-Jac's overall recruitment and hiring procedures to be structured in a way that ensures it is non-discriminatory, such as requiring Mar-Jac's advertising to not be primarily or exclusively in foreign languages (*Id.* ¶ 1(a)(i–ii)); 4) institutes annual nondiscrimination training for Mar-Jac supervisors over a four-year period (*Id.* ¶ 1(d)); 5) requires notice to be posted at Mar-Jac's facilities for a four-year period that informs past applicants of their right to be reconsidered for employment (*Id.* ¶ 1(e)); and 6) requires Mar-Jac to provide hiring data to Plaintiffs' counsel annually for a three-year period (*Id.* ¶ 1(f)). None of these actions items were provided in the Rule 68 offer. Accordingly, the Rule 68 offer is not effective against the Rule 23(b)(2) class.

However, in terms of whether the Rule 68 offer was more or less favorable than the eventual settlement to Davis, the Rule 68 offer is clearly more favorable to Davis than his ultimate individual settlement. The Rule 68 offer offered Davis

---

tried the case and lost. However, because the Court finds the Settlement Agreement was more favorable than the Rule 68 offer regardless, the Court does not discuss this issue further.

$82,000 and injunctive relief (Doc. 193-1), while he has settled his claims for $75,000. (Doc. 184-1.) Davis does not argue that his individual settlement was more favorable than the Rule 68 offer. Thus, the Rule 68 offer would bar the recovery of additional attorneys' fees and costs by Davis as an individual for the period after August 9, 2021. As Davis was the putative class representative for the Rule 23(b)(3) class, which was never certified despite an additional attempt after August 9, 2021, it would likewise follow that Counsel would not be entitled to fees and costs accrued in sole pursuit of Rule 23(b)(3) certification after August 9, 2021.

However, many of the efforts of Davis post-August 9, 2021 are intertwined with that of the Rule 23(b)(2) class, as the Rule 23(b)(2) class was based on the same claims, legal theories, and facts as the proposed Rule 23(b)(3) class and Mar-Jac was actively seeking decertification of the Rule 23(b)(2) class up until the settlement was reached. The briefs associated with the certification of the Rule 23(b)(2) class often discuss issues pertinent to the Rule 23(b)(3) class—such as the impact of the Escalante trial, Davis's standing to represent the class, whether the class is ascertainable or the definition should be altered—and vice versa. (Doc. 150; Doc. 153.) This is not shocking as both Rule 23(b)(2) and (b)(3) classes require the class representative to have standing, the class to be clearly defined and ascertainable, and the requirements of Rule 23(a) to be satisfied. Fed. R. Civ. P. 23.

Therefore, to the extent the efforts of counsel in furtherance of the Rule 23(b)(2) class are inextricably intertwined with efforts in pursuit of Rule 23(b)(3), Counsel would be entitled to fees and costs under Rule 68. In reviewing the billing records, only Attorney Robert Camp, Attorney Robert Wiggins, and the Paralegals billed time after the Rule 68 offer. As to Camp, the Court has identified the following hour entries that, based on their description and timing/context, should be excluded from the award for attorneys' fees because the hours pertained exclusively or primarily to the claims of Davis and/or the proposed Rule 23(b)(3) class:

- 3/10/2022 Start drafting facts for Motion to Reconsider.
- 3/11/2022 Research "Teamsters Presumption" and draft and send e-mail to Bob W. regarding narrowing class def. to comport with Escalantes.
- 3/14/2022 Confer with defense counsel regarding Motion to Enlarge; Draft Motion to Enlarge Deadline to file Rule 23(b)(3) Class Certification.
- 3/20/2022 Draft Statement of facts for Motion to Reconsider Cert. based on narrow definition of departments staffed by Escalantes; Provide LB a list of initial Escalante trial Exhibits needed; E-mail responding to Fox questions
- 3/21/2022 Continue statement of facts and start legal argument
- 3/22/2022 Continue statement of facts and legal arguments.
- 3/25/2022 Legal research Draft Motion to Reconsider.
- 3/28/2022 Draft Motion to Reconsider
- 3/29/2022 Draft Motion to Reconsider
- 4/25/2022 Final revisions filing of Plaintiff's Motion to Reconsider (Doc. 154).
- 8/22/2023 Start draft of Reply in Support of Reconsideration of 23(b)(3) Class; Re-read and highlight relevant portions of all past filings related to or pertinent to the reconsideration question.

- 8/23/2023 Continue identifying relevant excerpts from past filings for use in the Reply in Support of Reconsidering 23(b)(3) certification.
- 8/25/2023 Legal research for Reply and continue drafting same
- 8/26/2023 Continue drafting Reply
- 8/27/2023 Continue drafting Reply
- 8/28/2023 Legal research and continue drafting reply.
- 8/29/2023 Legal research and continue drafting reply.
- 8/30/2023 Legal research; Continue drafting reply; Proof reply and edit format; Finalize reply and exhibits; File Reply
- 11/1/2023 Confer w BW re supplementing motion to reconsider with 11th Circuit's decision in Berry re convincing Mosaic.
- 12/18/2023 Email correspondence with BW re minors at Mar-Jac's MS plant and need to file supplement in support of reconsideration
- 12/19/2023 Email correspondence with BW re minors at Mar-Jac's MS plant and need to file supplement in support of reconsideration.
- 12/19/2023 Draft Notice of Supplemental Support re Reconsideration and Mar-Jac's employment of Hispanic Minors; Send to BW for Review and Comment; Edit and file Notice.
- 1/12/2024 Look at Defendant's response to notice of supplemental authority.

(Doc. 194-3 at 21–25.)[5] The total number of hours spent on these efforts was 117.8 hours. Camp's remaining hours post-August 9, 2021 pertain to the Escalantes, appearances before the Court, discovery relevant to Davis and the Rule 23(b)(2) class, responding to Mar-Jac's motion to decertify the Rule 23(b)(2) class, and preparing the settlement documents and fee petitions. (Doc. 194-3 at 21–25; Doc. 197-2 at 37.) None of those time expenditures are barred under Rule 68.

---

[5] An additional billing entry is of note. On August 24, 2023, Camp recorded 5.8 hours for "Cont. work on draft of Reply in Support of Reconsideration of 23(b)(3) certification, including basis for continued 23(b)(2) certification." (Doc. 194-3 at 23.) Because this billing entry specifically references work associated with the Rule 23(b)(2) class, the Court finds that it is compensable.

As to Wiggins, the Court has likewise identified the following hour entries that should be excluded from the award for attorneys' fees based on Rule 68:

- 3/7/22 E-mail exchange reminder motions, etc due March 16, 2022
- 3/10/22 E-mail exchange with Robert on motion; review Robert's e-mail and excerpts from Esclantes' trial transcripts; review transcripts (Rogers, Garcia and Deivin Esclante) from Esclantes' trial
- 3/11/22 E-mail exchange with Robert on motion for reconsideration; review Camp's long e-mail re: changes to motion for reconsideration; e-mail exchange Camp re: Esclantes' trial transcripts
- 3/14/22 E-mail exchange re: motion for reconsideration extension of time; review defendant's e-mail not opposing extension; review Doc. 143 Plaintiff's Unopposed Motion for Enlargement of Time Deadline re: motion for reconsideration
- 3/16/22 E-mail exchange on settlement demand & motion for reconsideration
- 3/18/22 E-mail exchange on changes to motion for reconsideration (long e-mail); review Cam long e-mail to Dr. Fox and documents Attached
- 3/29/22 E-mail exchange with Robertb re: motion reconsideration; review draft of motion for reconsideration
- 4/2/22 Work on motion for reconsideration; e-mail exchange with Robert regarding full trial transcripts and trial exhibits
- 4/4/22 Continue work on motion for reconsideration; outline Vol. 4 of Escalantes' trial transcript for use in brief
- 4/5/22 Continue work on motion for reconsideration; read cases; edit trial transcript
- 4/6/22 Continue work on motion reconsideration; review and edit RLW Summary of Escalante Trial Transcript; research caselaw cases; e-mail exchange Robert Camp on Escalante Trial Transcripts; Read Rogers' direct trial testimony and create brackets regarding A-files, etc.
- 4/7/22 Continue work on motion to reconsider; create new draft; edit new draft
- 4/8/22 Continue work on motion to reconsider; read caselaw cases; create brackets from U. S. v. City of Miami

- 4/9/22 Continue work on motion to reconsider; read caselaw cases and create brackets
- 4/10/22 Continue work on motion to reconsider; create new draft
- 4/11/22 Continue work on motion to reconsider; review brackets from Chavez; review Camp e-mails to and from Jennings regarding motion for extension (7 e-mails); create new 2d draft of motion
- 4/13/22 E-mail exchanges with Robert regarding motion for extension to file motion to reconsider (several e-mails); e-mail exchange Robert re: Escalantes' trial exhibits and review attached Exhs. 24 and 25; review Latrice e-mail attaching Escalantes' Exhibits 26, 27 & 170; review 42 U.S.C. 2000e-5 (g) (2) (B); continue work on motion to reconsider and edit draft
- 4/15/22 Continue to work on motion reconsider – Rule 23(b)3; create new draft
- 4/16/22 Continue to work on motion reconsider – Rule 23(b)(3); read Caselaw and create brackets
- 4/18/22 Continue work on motion reconsider and brief; prepare M-J Knowledge of Escalante Hiring Illegal Hispanic Workers in 2018 outline; e-mail to Robert; review caselaw brackets from Sunday; e-mail exchanges with Robert and telephone calls; create new draft of SOF on M-J Conspiracy to hire Illegals and edit
- 4/19/22 Continue work on motion and brief for reconsideration; e-mail exchanges with Robert; read Escalantes' trial transcripts and create brackets; review Latrice's e-mail to court report regarding transcript of Escalantes' sentencing hearing; create new draft of SPF #2 for 23b3; review transcript of sentencing hearing' e-mail exchanges with Robert regarding motion and brief'; create new draft of brief
- 4/20/22 Continue work on motion and brief; e-mail exchange Camp regarding exhibits filing under seal; review Latrice e-mail on evidentiary submission; review Latrice e-mail attaching drafts of evidentiary Submission; draft of motion to filed documents under seal; draft of notice of filing exhibits under seal; review Camp e-mail listing exhibits for use; review Camp e-mail re: conversation with Judge Coogler advising that Escalantes' trial transcripts and exhibits should be filed under seal; review Camp long e-mail regarding Pedro Juarez Juarez testimony at the Escalantes' trial

- 4/21/22 Continue work on motion and brief; edit number of times and create new drafts several times; e-mail exchanges with Camp on exhibits and new evidence; review Camp trial Witnesses
- 4/22/22 Continue work on brief re: Rule 23b3; edit and create new drafts; create Trevino insert; e-mail exchanges with Robert on exhibits, brief and motion; review updated evidentiary submission; review Doc. 147 (Defendant's Motion for Leave to file under seal); review Doc. 148 (Joint Motion enlargement of time) and Doc. 149 (Plaintiffs' motion for leave to file under seal)
- 4/24/22 Continue work on Rule 23b3 brief; create new draft
- 4/25/22 Review & outline Mar-Jac's Brief on reconsideration and Declaration of Breanna Tucker; e-mail exchanges regarding evidentiary submission, motion and brief; continue work on Rule 23b3 brief; create new draft and edit a number of times; create brackets for brief; finalize and have evidentiary submission, motion and brief e-filed;review Doc. 155 – Text order granting motion to seal and Doc. 156 – Text order granting motion seal; review final e-filed Doc. 152 Evidentiary Submission; Doc. 153 Motion and Doc. 154 Brief in support of motion (all day until apx. 11:30 p.m).
- 7/26/23 Review exhibits & Mar-Jac Opposition to Plaintiffs' motion to reconsider
- 8/2/23 E-mail exchanges with Robert about upcoming reply and setting Conference call for Friday
- 8/4/23 E-mail exchanges with Robert on reply to Mar-Jac opposition to plaintiff's motion for reconsideration
- 8/16/23 Review Plaintiffs' motion for extension to file reply to defendant's opposition motion reconsideration
- 8/31/23 Review Doc. Plaintiffs' reply in support of motion reconsideration; review corrections to brief reconsideration
- 11/1/23 E-mail exchange with Robert about submitting supplemental authority Barry v. Crestwood; review Barry v. Crestwood
- 12/19/23 E-mail exchange Robert re: submitting notice of supplemental support; review/edit notice of supp. Support
- 1/12/24 Review Doc. 182 – defendant's opposition plaintiff's notice Of supplemental authority (Doc. 181)

(Doc. 194-3 at 84–91.) This results in a reduction of 153 hours billed by Wiggins. The Court notes that parts of some of Wiggins's time entries could arguably be construed as serving the Rule 23(b)(2) class, such as the time entry on April 19, 2022. "Continue work on motion and brief for reconsideration; e-mail exchanges with Robert; read Escalantes' trial transcripts and create brackets; review Latrice's e-mail to court report regarding transcript of Escalantes' sentencing hearing; create new draft of SPF #2 for 23b3; review transcript of sentencing hearing' e-mail exchanges with Robert regarding motion and brief'; create new draft of brief." (Doc. 194-3 at 86–87.) But even putting aside any concerns regarding impermissible "block billing," *see Anderson v. Surgery Center of Cullman, Inc.*, 2:12-cv-00598, 2018 WL 8807149, at *12 (N.D. Ala. Aug. 27, 2018), the Court perceives this entry, like all the others listed with it, to have largely been in service of the attempted Rule 23(b)(3) certification. The Court therefore excludes these entries from the award for attorneys' fees.

Regarding the hours spent by paralegals after the Rule 68 offer, the only time the Court could determine was not compensable was this entry for 4.5 hours: "4/20/2022 Draft Plaintiff's Evidentiary Submissions, Motion to File Under Seal, and Notice to File under Seal; Sent all drafts to BW and RJC; Pulled exhibits and put in folder; Looked for information regarding L. Trevino in reference to I-9 form, Application. and Print Screens." (Doc. 194-3 at 31–32.) This is because, when taking

this entry in context with the docket, this work pertained to the evidentiary submissions attached to Davis's third motion to reconsider the Rule 23(b)(3) class. (*see* Doc. 152.) Therefore, the 4.5 hours spent in this effort are not compensable.

The Court finds the following number of hours are not barred by Rule 68:

| Timekeeper | Submitted Time | Allowed Time Under Rule 68 |
|---|---|---|
| Robert Camp | 1177.30 | 1059.5 |
| Robert Wiggins | 1082.80 | 929.8 |
| Eric Sheffer | 11.60 | 11.60 |
| Russell W. ("Rusty") Adams | 13.80 | 13.80 |
| Paralegals | 186.70 | 182.20 |

## B. Attorneys' Fees Calculable in the Lodestar

"The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The figure obtained from calculating the number of reasonable hours by a reasonable rate is called the "lodestar." *Loranger*, 10 F.3d at 781. There is a strong presumption that the lodestar is the reasonable fee. *City of Burlington v.*

*Dague*, 505 U.S. 557, 562 (1992). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours extended and hourly rates." *Hensley*, 461 U.S. at 437. A fee opponent may then object to the fee applicant's request, but "objections and proof from fee opponents concerning hours that should be excluded must be specific and reasonably precise." *Am. Civ. Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999) (internal quotations omitted).

### i.    Hourly Rate

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

In establishing the appropriate hourly rate, the fee applicant must provide "more than an affidavit of the attorney performing the work." *Norman*, 836 F.2d at 1299. Rather, "[e]vidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *Id.* "The weight to be given to opinion evidence of course will be affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge." *Id.* And further, the Court "is itself an expert on the question

and may consider its own knowledge and experience concerning reasonable and proper fees." *Id.* at 1303 (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)). The Court may also consider the twelve factors from *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974)[6] to determine "if the proposed rate actually reflects the true worth of counsel . . . in the rare cases where [the factors] are not fully captured in the lodestar." *In re Home Depot Inc.*, 931 F.3d 1065, 1091 (11th Cir. 2019). Though, the Court is not required to march through the *Johnson* factors in any given case because they are largely redundant. *See In re Home Depot Inc.*, 931 F.3d at 1091.

Plaintiffs' counsel asks for the following rates: $550 per hour for the work of Attorney Robert Camp; $850 per hour for the work of Attorney Robert Wiggins; $300 per hour for the work of Attorney Eric Sheffer; $550 per hour for the work of Attorney Russell W. ("Rusty") Adams; $125 per hour for the work of paralegals. (Doc. 190 at 2.) Mar-Jac does not specifically challenge these rates but instead defers to the Court's expertise. (Doc. 194 at 18.)

---

[6] The *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (citing *Johnson*, 488 F.2d at 717–19).

First, as to Attorneys Robert Camp and Robert Wiggins, Wiggins has almost fifty years of experience in employment law and class action litigation (Doc. 192-1 ¶ 2), while Camp has over twenty-five years of experience (Doc. 192-4 ¶¶ 4, 7). Plaintiffs offer the opinion evidence of Attorneys Joe Whatley (192-1) and Joseph Sellers (Doc. 193-1) as to the reasonableness of Camp's and Wiggins's fees, along with direct evidence of the fee awards in cases such as *Womack v. Dollar General*, No. 2:06-CV-465-VEH-RRA (Oct. 24, 2012); *Briggins, et al v. Elwood TRI, Inc.*, No. 1:08-cv-01861-KOB, Doc. 255 (N.D. Ala. Feb. 7, 2014), *approved id.* at Doc. 257 (N.D. Ala. Mar. 11, 2014); *Burroughs v. Honda Mfg. of Ala., LLC*, 1:08-CV-1239-VEH, Doc. 380 (N.D. Ala. Feb. 7, 2014), *approved id.* at Doc. 382 (N.D. Ala. Mar. 10, 2014); and *Tara Henderson v. Mid-South Electronics*, 4:13-cv-001166-KOB (N.D. Ala. Sept. 27, 2016).

Whatley is an experienced employment law and class action attorney, practicing in Alabama. He has served as an expert on the question of attorneys' fees in several complex employment cases. (Doc. 192-2 ¶¶ 1, 5, 7.) Based on his knowledge of prevailing market rates and his own experience in litigating these kinds of cases (*Id.* ¶ 7), along with consideration of the *Johnson* factors—including the number of years this litigation spanned and the work/skill it required, the complexity of the legal and factual issues in this case, the risk of undertaking this litigation, the highly-regarded reputation of the attorneys at Wiggins Childs, the

undesirability of taking on this kind of case, the result obtained and the benefit to the public interest in that result, etc.—Whatley found the requested fees reasonable. (*Id.* ¶ 15.) Whatley specifically opined that for a lawyer of Camp's skills, expertise, reputation, and responsibilities, a fee in the range of $575 to $650 per hour would be reasonable. (*Id* ¶ 15(a)). For a lawyer of Wiggins's skills, expertise, reputation, and responsibilities, Whatley opined that a fee range of $850 to $1000 per hour would be reasonable. (*Id.*)

Sellers is a well-respected employment and class action attorney who has personally handled many cases throughout the country. He similarly testified, based on his own personal knowledge and experience and in consideration of the *Johnson* factors, that Wiggins's and Camp's requested rate is reasonable. (Doc. 192-3 ¶ 3, 6, 9, 10–14.) Sellers recommended the same range of fees for Wiggins and Camp as Whatley did (*Id.* at ¶ 14(f)).

As to the aforementioned cases, in *Womack*, which was a 2012 Title VII class action in this district, Wiggins was awarded a fee in the range of $821.79 to $825 per hour. *Womack*, No. 2:06-CV-465-VEH-RRA, at 17. The *Womack* court further opined that a rate of $900 to $1,000 per hour would not have been excessive. *Id.* In *Briggins,* which was a Fair Labor Standards Act ("FLSA") class action, the court found that $625 per hour was a reasonable rate to award Wiggins in 2014, and the court specifically noted that a fee increase of $75 over the course of seven years was

25

not unreasonable. *Briggins*, No. 1:08-cv-01861-KOB, Doc. 255 at 25. In *Burroughs*, which was also an FLSA class action considered with *Briggins*, the court found that $400 per hour was a reasonable rate for Camp in 2014. *Burroughs*, 1:08-CV-1239-VEH, Doc. 380 at 23. And lastly, in *Henderson*, which was an employment discrimination case involving an attorney unaffiliated with this lawsuit but similarly situated with over twenty years of experience, the court determined that $450 per hour was a reasonable rate in 2016. *Henderson*, 4:13-cv-001166-KOB, Doc. 68 at 4–5. Camp asserts that while his requested fee is higher than that awarded in *Briggins* or *Henderson*, nearly a decade has passed since those cases were decided. (Doc. 192-3 ¶¶ 10–11.)

Based on the opinion of Whatley and Sellers, the aforementioned cases and the passing of time and inflationary pressure since those cases, and the Court's own expertise on this subject, as informed by the *Johnson* factors, the Court finds that the rate requested for Wiggins and Camp is reasonable. Accordingly, in calculating the lodestar, the Court will use a fee rate of $850 per hour for Wiggins and $550 per hour for Camp.

As to Attorney Adams, the declarations of Whatley and Sellers generally discuss the nature of this case and the qualifications of Wiggins Childs's lawyers, but they do not specifically mention Adams. (Doc. 192-2; Doc. 192-3.) The record is likewise devoid of a declaration from Adams discussing his qualifications and

experience. However, the Alabama State Bar's records indicate that Adams has been licensed to practice law in Alabama since 1990. Further, in *Burroughs*, Adams's rate was determined to be $450 per hour based on his then-twenty years of experience and his reputation as a "highly regarded and skilled attorney[] in labor and employment-related litigation." *Burroughs*, 1:08-CV-1239-VEH, Doc. 380 at 25–26. The *Burroughs* court explained that the $450 per hour rate was "consistent with the usual and customary rates charged in the Birmingham and central Alabama legal market for lawyers with experience and skill comparable to [his]." *Id.* As nearly ten years have passed since *Burroughs* was decided, and Adams's work on this matter implicated the same characteristics justifying the fees of Wiggins and Camp under *Johnson* (such as complex issues, favorable result, undesirability of the case, etc.), the Court finds that Adams's proposed rate of $550 is reasonable.

As to Attorney Sheffer, the declarations of Whatley and Sellers are likewise devoid of any specific mentions of him, and he has not personally provided a declaration. A review of the Alabama State Bar records indicates that Sheffer has been admitted to practice since 2018 and the billing records show his work on this case was confined to 2020 (Doc. 192-10). Because he is more junior than the other Plaintiffs' attorneys on this case, he is not mentioned in any of the aforementioned cases. However, in *Burroughs*, the court determined that an attorney with three or less years of experience was entitled to a rate of $200 per hour and an attorney of

seven years of experience was entitled to a rate of $275 per hour. *Burroughs*, 1:08-CV-1239-VEH, Doc. 380 at 25. Like *Burroughs*, which was decided almost ten years ago, this is a complex litigation case. It was a high-risk, high-reward case taken on a contingency fee basis where the ultimate result served an important public interest. *See Johnson*, 488 F.2d at 717–19. In the Court's experience, Sheffer's requested rate appears to be at the high-end of a billable rate for a junior associate in Birmingham, Alabama. However, when considering the time and inflationary pressure on the legal market since *Burroughs*, along with the *Johnson* factors, the Court finds Sheffer's requested rate reasonable.

Lastly, as to the rate requested for paralegal time, Plaintiffs have similarly not provided any opinion evidence but have provided direct evidence of the paralegal fee in *Burroughs* and *Briggins*. In *Burroughs*, the court determined that the appropriate fee for paralegal work was $100 per hour. *Burroughs*, 1:08-CV-1239-VEH, Doc. 380 at 26. In *Briggins*, the court awarded a fee of $98 per hour for paralegal work. *Briggins*, No. 1:08-cv-01861-KOB, Doc. 255 at 23. While the Plaintiffs here request a paralegal fee of $125 per hour, the Court finds that figure justifiable because 1) it is in line with the awards in *Burroughs* and *Briggins*, when adjusted for time and inflation and 2) there was a tremendous amount of document production and evidentiary submission that implicated a level of expertise, even when considering that the Court "may award fees for work done by . . . paralegals

only when they perform work typically done by lawyers," *Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1377 (M.D. Fla. 2010) (citing *Jean v. Nelson,* 863 F.2d 759, 778 (11th Cir.1988)). Accordingly, the Court will use a rate of $125 per hour in calculating the paralegal time in the lodestar.

### ii.    Number of Hours

In determining what hours factor into the lodestar, the Court excludes "hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Procedurally, if the court finds that the fee applicant claims an unreasonably high number of hours, "the court has two choices: it may conduct an hour-by-hour analysis or it may reduce the requested hours with an across-the-board cut." *Bivins*, 548 F.3d at 1350; *see also Villano v. City of Boynton Beach*, 254 F.3d 1302, 1311 (11th Cir. 2001) (explaining that when a fee applicant submitted "voluminous" fee documentation, requesting compensation for 569.30 hours, the district court was not expected to conduct an hour-by-hour analysis). The Court cannot both conduct an hour-by-hour reduction and reduce the requested, compensable hours across-the-board, but it instead must choose one approach so as to not "doubly-discount" hours in the lodestar. *See Bivins*, 548 F.3d at 1352.

Mar-Jac raises the following objections to the number of hours in Plaintiffs' fee request: 1) any time spent on "fruitless efforts," such as pursuit of Rule 23(b)(3) certification or unsuccessful discovery disputes, should be excluded; 2) the Court

should reduce the lodestar to account for "block billing";  and 3) the Court should reduce the lodestar to account for partners performing associate or clerical work.

First, the Court examines Mar-Jac's argument that certain hours should be excluded from the lodestar because they were spent on "fruitless efforts," namely three discovery motions denied by the Court and the unsuccessful pursuit of Rule 23(b)(3) class certification. As the Supreme Court explained in *Hensley*, if the plaintiff is unsuccessful in prevailing on claims that were *unrelated* to the claims in which he prevailed on, the hours spent on the unrelated claims do not factor into the lodestar. *Hensley*, 461 U.S. at 434–35 (emphasis added). That does not mean that "a plaintiff who has won substantial relief should . . . have his attorney's fee reduced simply because the district court did not adopt every contention raised." *Id.* at 435. Courts should not take "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." *Id.* at 435 n.11 ("For example, a plaintiff who failed to recover damages but obtained injunctive relief, or vice, versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time."). To the contrary, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435. It is where the plaintiff's claims are unrelated, meaning the claims are "based on different facts and legal theories" and turn on different evidence, that the Court should exclude the hours spent on these

unsuccessful claims from the lodestar. *Id.* at 434; *see also Johnson v. Borders*, 36 F.4th 1254, 1283–84 (11th Cir. 2022).

While the Court disagrees with Plaintiffs' characterization of this case as a "pattern-or-practice" case, as conceptualized under *Teamsters v. United States*, 431 U.S. 324 (1977) (*see* Doc. 183 at 18), for which complete relief was obtained, it is clear that time spent on the three unsuccessful discovery motions and pursuit of the Rule 23(b)(3) class was "related" to Plaintiffs' successful claims. First, the three unsuccessful discovery motions—a Motion to Strike Defendant's Unauthorized Supplemental Expert Report (Doc. 88), Motion to Deem Its Statement of Facts Admitted and to Strike Defendant's Reply Brief (Doc. 89), and Motion for Relief from Defendant's Spoliation (Doc. 92)—were all filed in close proximity to Mar-Jac's Motion for Summary Judgment, which Davis prevailed on. The Motion to Deem Its Statement of Facts Admitted and to Strike Defendant's Reply Brief directly pertains to the briefing of the Motion for Summary Judgment. Further, the Motion to Strike Defendant's Unauthorized Supplemental Expert Report pertains to an expert report that likely would have been used at Davis's and the Rule 23(b)(2) class's trial. And the Motion for Relief from Defendant's Spoliation was denied with leave to refile in a properly filed pretrial motion because the requested "penalties would serve little purpose at this juncture." (Doc. 122 at 18 n.9.) Presumably, counsel would likely have refiled this Motion on behalf of Davis and the Rule

23(b)(2) class leading up to trial. Accordingly, the Court finds that these Motions are related to Plaintiffs' overall success in this case.

The same result follows for time spent in pursuit of the Rule 23(b)(3) class. As previously discussed, certification of the Rule 23(b)(2) class, pursuit of certification on the Rule 23(b)(3) class, and Davis's individual claims all relied on the same legal theories: disparate treatment and disparate impact under Title VII and Section 1981. (Doc. 183 at 1–2.) The underlying facts are also the same—that is, whether Mar-Jac had policies and procedures in place to favor the hiring of Hispanic applicants at the expense of non-Hispanic applicants. (*Id.*) The evidence used to support both claims was the same—specifically, the deposition testimony of Mar-Jac's management, the statistical analyses of Dr. Liesl Fox, and the testimony of Deivin and Crystal Escalante. (*Id.* at 2–3.) While Plaintiffs relied on additional testimony of the Escalantes from their criminal trial and altered its Title VII disparate treatment theory in pursuing the unsuccessful certification of the Rule 23(b)(3) class (Doc. 183), both of these efforts would have only strengthened Davis's and the Rule 23(b)(2) class's chances at trial. Accordingly, based on the substantial overlap between the claims of Davis, the Rule 23(b)(2), and Rule 23(b)(3) class, the Court finds that these claims are related. Therefore, under *Hensley*, the Court will not categorically exclude time spent on pursuit of Rule 23(b)(3) certification from the lodestar.

Next, the Court addresses Mar-Jac's contention that the Court should reduce the lodestar based on block billing. When a fee applicant engages in "block billing," which is "listing 'all the day's tasks on a case in a single entry without separately identifying the time spent on each task,'" that "warrants reduction of the number of hours claimed in the attorneys' fee motion because the court cannot ascertain what hours were spent on what task." *Anderson*, 2018 WL 8807149, at *12 (fist quoting *Ceres Environmental Services, Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203 (11th Cir. 2012); then quoting *Kearney*, 713 F. Supp. 2d at 1377). This is because when the Court cannot ascertain what hours were spent on a specific task, it is difficult for the Court to determine whether the expenditure of attorney time was reasonable. *See Ceres*, 476 F. App'x at 203.

Notably, some courts have opined that "[i]ncluding more than one task in a single billing entry does not, in itself constitute inappropriate block billing, especially where a thorough description of the activities performed clarifies rather than obscures the record." *Dream Custom Homes, Inc. v. Modern Day Const., Inc.*, No. 8:08-cv-1189-T-17AEP, 2013 WL 393916, at *4 (M.D. Fla. Jan. 8, 2013), *report and recommendation adopted*, 2013 WL 394014 (M.D. Fla. Jan. 31, 2013) (citation omitted). Rather, it is when the billing entry contains multiple tasks for which the Court cannot gauge the reasonableness of time spent on each task that the Court should reduce for block-billing. *See Ceres*, 476 F. App'x at 203.

In reviewing the billing records, it is clear that Attorneys Sheffer and Adams, along with the Paralegals, did not engage in block-billing. (Doc. 194-3 at 3, 66.) However, the remainder of the bills are more problematic.

Attorney Wiggins's billing records often suffer from block billing, as he commonly billed in eight-hour increments or more for a variety of different tasks. For example, on September 4, 2020, Wiggins billing entry for fifteen hours stated: "Continue work on reply class cert; e-mail exchanges Camp and Rusty Adams re review draft; continue work on opposition motion strike (re: Daubert); e-mail exchange Rusty Adams to review response; review Camp's draft of opposition and motion for sanctions; finalize and have filed; review filed documents (Docs. 83-85) review defendant's reply (Doc. 82) (All day until around 9:30 p.m.)." (Doc. 194-3 at 77.) From this entry, the Court is unable to determine how much time was spent working on the class certification reply brief compared to time spent on the opposition to Mar-Jac's motion to strike compared to time on internal emails, etc. The Court therefore cannot assess the reasonableness of the time spent on each task. For instance, while it would likely be reasonable to spend ten hours working on the reply brief, the same cannot be said for drafting an email.

Attorney Camp's billing entries often suffer from the same deficiency. For example, on October 29, 2019, Camp entered this billing entry for 7.70 hours: "Continue reviewing document production in relation to Pendley depo; continue

summarizing depo; continue to compile numbers relative to the three-strike policy for expert and confer w lb and da re same; draft and send initial conferral email; review defendant's email re timing of a response and respond to same with additional conferral items." (Doc. 194-3 at 8.) From this entry, the Court cannot ascertain how many hours were spent on document review, how many hours were spent summarizing the deposition, how many hours were spent "compiling numbers," and how many hours were spent on emails. The Court can therefore only take a guess at whether the expenditure of this time was reasonable.

The Court has no doubt that a substantial amount of work was put into this case by Plaintiffs' counsel; however, without more specific bills, the Court cannot evaluate the reasonableness of each task. Therefore, based on the deficiencies in the billing of these individuals, the Court finds that a 10% across-the-board cut in the block-billed hours is appropriate and consistent with decisions of other courts in this circuit.[7] *See Ceres*, 476 F. App'x at 203 (affirming district court's 10% reduction in block-billed hours); *Anderson*, 2018 WL 8807149, at 13 (applying a 10% across-the-board reduction in hours for block billing); *Lil' Joe Wein Music, Inc. v. Jackson*, No. 06-20079-CIV, 2008 WL 2688117, at *13 (S.D. Fla. July 1, 2008) (applying a

---

[7] The Court's decision to employ a 10% cut takes into account only the hours not previously excluded under Rule 68. As the Court had no discretion to allow compensation for hours properly excluded under Rule 68, exclusion of those hours was a preliminary concern prior to calculating the lodestar. No "double-discounting" has occurred.

20% reduction for block-billed hours); *Oravec v. Sunny Isles Luxury Ventures L.C.*, No. 04-22780-CIV, 2010 WL 1302914, at *13 (S.D. Fla. Mar. 31, 2010 (applying a 25% reduction for block-billed).

Lastly, the Court addresses Mar-Jac's contention that the Court should reduce the lodestar based on work performed by partners that could have been performed by associates or clerical staff. Compensation at a lawyer's rate requires the attorney to perform a lawyer's work—"a fee applicant is not entitled to compensation at an attorney's rate simply because an attorney undertook tasks which were mundane, clerical or which did not require the full exercise of an attorney's education and judgment." *Norman*, 836 F.2d at 1306. However, Mar-Jac has pointed to only one billing entry that it contends could have been performed by more junior attorneys or clerical staff: an entry from February 1, 2018 by Attorney Camp for 1.8 hours, entitled "Drive to Jasper and obtain Mr. Davis' signature on his EEOC charge; return to Birmingham." (Doc. 194-3 at 5.) The Court agrees that this effort could have been accomplished through overnight mail or a courier service, and therefore it was unreasonable for Camp to bill this time at his rate. But the Court has only seen one other time entry that, at least partially, did not require the skill and expertise of the attorney who performed the task. (Doc. 194-3 at 15.)[8] As the Court has taken an

---

[8] In this entry, Camp billed for a variety of tasks, including driving to and from Tuscaloosa to deliver documents to the Court.

across-the-board rather than an hour-by-hour approach in calculating the lodestar, the Court will not specifically exclude these hours from the lodestar. The Court believes the penalty for billing for this time is reflected in its 10% across-the-board cut.

Taking in these deductions, the lodestar can be calculated as follows:

| Timekeeper | Time Allowable Under Rule 68 | Time Included in Lodestar | Hourly Rate | Lodestar |
|---|---|---|---|---|
| Robert Camp | 1059.5 | 953.55 | 550 | 524,452.50 |
| Robert Wiggins | 929.8 | 836.82 | 850 | 711,297.00 |
| Eric Sheffer | 11.60 | 11.6 | 300 | 3,480.00 |
| Russell W. ("Rusty") Adams | 13.80 | 13.8 | 550 | 7,590.00 |
| Paralegals | 182.20 | 182.2 | 125 | 22,775.00 |
| Total | 2,196.9 | 1,997.97 | N/A | 1,269,594.50 |

### iii.    Adjustment of the Lodestar

After calculating the lodestar, the Court may still reduce the fee award if the plaintiff achieved only "partial or limited success." *Popham v. City of Kennesaw*, 820 F.2d 1570, 1578 (quoting *Hensley*, 461 U.S. at 436); *see also Bivins*, 548 F.3d

at 1352; *Hensley*, 461 U.S. at 436 ("[T]he most critical factor [in determining a fee award] is the degree of success obtained."). For civil rights claims, "a court 'must be careful not to place undue emphasis on the modest money damages that were found' . . . because successful civil rights actions vindicate a public interest." *Villano*, 254 F.3d 1302, 1306 (11th Cir. 2001) (quoting *Williams v. Thomas*, 692 F.2d 1032, 1038 (5th Cir. 1982)). Additionally, "vindication of class-wide rights are generally more significant than relief granted for an isolated violation of constitutional rights." *Norman*, 836 F.2d at 1302. That is not to say that the differences in damages pursued and damages ultimately received is not relevant— "a court remains obligated to account for all distinct measures of success when determining whether success was limited." *Villano*, 254 F.3d at 1308; *see also Popham*, 820 F.3d at 1580–81 (upholding the district court's reduction of the lodestar by two-thirds when the plaintiff only recovered 1.5% of the damages sought in a civil rights case and where the district court properly considered the public benefit of the action).

Plaintiffs undeniably achieved a very good result in this case. As explained above, Plaintiffs achieved a settlement with robust injunctive and declaratory relief that serves an important government interest on a class-wide basis. This relief ensured that certain policies, such as the three-strike policy, were not reenacted. And,

38

contrary to Mar-Jac's arguments, this relief was properly sought on a class-wide basis.

But the Court would be remiss if it ignored that Plaintiffs' counsel also came into this lawsuit seeking certification of a Rule 23(b)(3) class with estimated multi-million dollars in damages. At one point, Plaintiffs represented to the Court that the economic loss to the proposed class was nearly $12,000,000. (Doc. 180 at 28.) During the parties' settlement negotiations, Plaintiffs' counsel perceived class damages to be, at its highest estimate, around $17,000,000, though Plaintiffs' counsel simultaneously proposed a blow-out provision and claims-made procedure that they believed would have likely reduced damages to approximately $2,500,000. (Doc. 194-1, Exhibit 1, at 7; Doc. 194-1, Exhibit 3, at 13; Doc. 197-1 ¶¶ 5(c), 12(a).) Regardless, the fact remains that Plaintiffs' counsel was unsuccessful in achieving certification of this class. Rather than several millions of dollars in damages, only $75,000 in monetary damages was achieved.

And throughout the settlement negotiations, Plaintiffs counsel remained steadfast in their determination to achieve class-wide monetary relief. (Doc. 197-1 ¶¶ 4–12.) Presumably, if Plaintiffs' counsel had agreed to move off of class-wide damages in negotiations, this case could have resolved much sooner. *See Caplan v. All Am. Auto Collision*, 36 F.4th 1083, 1092 (11th Cir. 2022) (explaining that if a plaintiff has been "unduly litigious," thereby "unnecessarily prolong[ing] the

litigation," the Court may also take that into consideration). All this leads to the inescapable conclusion that Plaintiffs' counsels' success was only partial, and it requires a downward reduction of the lodestar.

Upon due consideration, the Court believes the lodestar should be reduced by 15%, which amounts to an attorneys' fee of $1,079,155.32. This reduction accounts for the success in this lawsuit, while acknowledging that it was "limited in comparison to the scope of the litigation as a whole." *See Norman*, 836 F.2d at 1302. It is also consistent with the reductions in other cases. *See Anderson*, 2018 WL 8807149, at * 13 (reducing the lodestar by 20% for limited success when it was difficult to disaggregate the time spent on successful and unsuccessful claims and the plaintiff prevailed on only two sets of claims after nearly six years of litigation); *Krop v. Nicholson*, 8:06-cv-157-T-MSS, 2008 WL 11439394 (M.D. Fla. Mar. 13, 2008) (reducing the lodestar by 15% when the plaintiff achieved a substantial result on one of her Title VII claims but was unsuccessful in two of her other claims); *St. Fleur v. City of Fort Lauderdale*, 149 F. App'x 849, 854 (11th Cir. 2005) (affirming a 30% reduction in the lodestar when a plaintiff was successful on his Title VII claims but unsuccessful on his § 1983 claims and the district court took into account the public benefit achieved); *see Mock v. Bell Helicopter Textron, Inc.*, 456 F. App'x 799, 802 (11th Cir. 2012) (affirming district court's reduction of 25% when the plaintiff only recovered 13.28% of damages sought).

### C. Costs

"[W]ith the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under section 1988" and "the standard of reasonableness is to be given a liberal interpretation." *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983). Plaintiffs request $65,693.00 in costs. (Doc. 190.) Mar-Jac objects to this award because some costs were incurred after its Rule 68 offer. Instead, Mar-Jac contends the Court should reduce costs to $59,698.00. (Doc. 194.)

As discussed above, the Rule 68 offer was effective only against Davis, and by extension the putative Rule 23(b)(3) class. In evaluating the submitted bill of costs, the Court finds the following costs to be unrecoverable because, when viewing them in context with Wiggins and Camp's billing records, they were incurred exclusively or primarily by Davis and/or the Rule 23(b)(3) class:

- 3/31/22 March Lexis Nexis Bill
- 3/31/22 March Lexis Nexis Bill
- 4/26/22 Mileage Reimbursement
- 4/30/22 April Lexis Nexis Bill
- 4/30/22 April Lexis Nexis Bill
- 4/30/22 Lexis Nexis Bill
- 7/31/22 Lexis Nexis Bill
- 8/31/22 Lexis Nexis Bill
- 10/31/22 Lexis Nexis Bill
- 12/31/22 Lexis Nexis Bill
- 8/25/23 Scans
- 8/31/23 Lexis Nexis Bill

41

- 12/31/23 Lexis Nexis Bill

(Doc. 194-3 at 60–64.)[9] This reduces the recoverable costs by $775.81.

The Court finds the remainder of the costs reasonable. Plaintiffs are awarded costs in the amount of $64,917.19.

## III.   CONCLUSION

For the reasons provided above, the Court approves the parties' settlement and enter the stipulated declaratory and injunctive relief. The Court further awards attorneys' fees of $1,079,155.32 and costs of $64,917.19 to Plaintiffs' counsel. An order will be entered contemporaneously with this Opinion.

---

[9] All of the costs from August 9, 2021 to March 2022 pertained to preparation for trial, possible notice to Rule 23(b)(2) class members, and the Escalantes' criminal trial. All of these costs are compensable.

After March 2022, the Court excluded Lexis Nexis bills for when it seems reasonably clear that the attorneys were conducting research pertaining to their Motion to Reconsider Certification of the Rule 23(b)(3) class (March 2022, April 2022, July 2022, August 2022, August 2023, December 2023) or when, based on the attorneys billing records, it appeared that nothing related to the Rule 23(b)(2) class was in works (October 2022, November 2022, December 2022). The Court did decide not to exclude one Lexis Nexis bill for 4/30/22 because during that time the attorneys had begun research on Mar-Jac's Motion to Reconsider Certification of the Rule 23(b)(2) class, while simultaneously also researching their own Motion to Reconsider to Certification of the Rule 23(b)(3) class; however, as it was clear from the attorneys' billing records that their efforts for that month primarily pertained to their own Motion to Reconsider, the Court excluded the remaining Lexis Nexis bills for that month. The Court also excluded the 4/26/22 Mileage reimbursement because it was unclear what that could have related to.

The remaining Lexis Nexis bills, when taken in context, clearly related to work opposing Mar-Jac's Motion to Reconsider Certification of the Rule 23(b)(2) class (March 2022 and September 2022), are related to discovery disputes pertinent to the Rule 23(b)(2) class (March 2023, May 2023, July 2023), or are related to this fee petition. The remaining costs pertain to discovery costs pertinent to the Rule 23(b)(2) class, prints related to opposing Mar-Jac's Motion to Reconsider, and costs related to this petition.

**DONE** and **ORDERED** on August 8, 2024.

_____
L. Scott Coogler
United States District Judge

215755